UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
RONALD PATETTA; ROSEMARY :
PATETTA; :
:
       Plaintiffs, : Civil Action No. 3:09-cv-2848-FLW
:
:
       v. :
:
WELLS FARGO BANK, NA, et al., :
: **OPINION**
       Defendants. :
_____:

       This cause of action arises from a dispute over the terms and obligations of a refinance mortgage issued to Plaintiffs Ronald and Rosemary Patetta ("Plaintiffs") in 2004, and the statutory disclosure requirements imposed on lenders by several federal laws. Plaintiffs allege that Defendants Argent Mortgage Company, LLC ("Argent"), through its fraudulent misrepresentations, and Wells Fargo Bank NA, Ameriquest Mortgage Company ("Ameriquest"), Park Place Securities, Inc. ("Park Place"), HomeEq Servicing Corporation ("HomeEq") (collectively "Defendants"),[1] as assignors in interest to Plaintiffs' loan obligation, violated the Truth in Lending Act ("TILA"), Real Estate Settlement Practices Act ("RESPA"), New Jersey Racketeering Influenced and Corrupt Organizations Act

_____

[1] Plaintiffs' Complaint also names Dana Capital Group, Inc. ("Dana Capital"), and its employee Matthew Reilly as Defendants in the above-captioned matter. Plaintiffs allege that Dana Capital and Reilly, as the mortgage broker of the disputed loan, tricked Plaintiffs into entering into an adjustable rate mortgage. Neither Defendant has made an appearance or moved to dismiss Plaintiffs' Complaint. Nevertheless, because Plaintiffs' federal claims are barred by the applicable statute of limitations, those counts against Reilly and Dana Capital are summarily dismissed as well. See infra.

1

("NJRICO"), and the New Jersey Consumer Fraud Act ("NJCFA").  In addition, Plaintiffs assert common law claims for fraud, negligence, and breach of fiduciary duty.  Presently before the Court are Defendants' Motions to Dismiss Plaintiffs' TILA and RESPA claims as time barred by the applicable statute of limitations.  In the alternative, Defendants contend that Plaintiffs' claims are barred by the Rooker-Feldman doctrine.  In addition, Defendants seek to dismiss Plaintiff's NJRICO, negligence, and breach of fiduciary duty claims. For the reasons that follow, Defendants Motions to Dismiss Plaintiffs' claims are granted in its entirety as to Counts I, III, VI, IX, and XI.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Since Defendants move to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6), the following version of events assumes Plaintiff's allegations to be true.

Plaintiffs are the owners of residential property located at 509 Barton Lane, Neshanic Station, New Jersey. Pl.'s Compl. ¶1.  At the time of the Complaint, Mr. Patetta had been employed as a financial planner for over twenty-five years.  Desiring to refinance the Barton Lane property, Plaintiffs went to Dana Capital, and its employee Matt Reilly, to secure a lower fixed rate mortgage that did not contain a prepayment penalty.  Compl. ¶15. Reilly arranged an appraisal of the Barton Lane Property and provided Plaintiffs with a good faith estimate.  Compl. ¶16.  After reviewing the relevant documents, Plaintiffs believed they were receiving a mortgage with an interest rate of 8.25%, payable over the thirty year lifetime of the loan in $4,200 a month installment payments.  On or about August 6, 2004, Plaintiffs executed a Note in the amount of $648,750, payable to Argent. Compl. ¶¶13-14.  At closing, Plaintiffs were represented by an attorney who, upon reviewing the closing documents, informed his clients that the mortgage contained no

hidden clauses or prepayment penalties.  Compl. ¶¶ 31-32.

Nevertheless, Plaintiffs allege that the loan they received was not what they had originally bargained for, and that Dana Capital, as the mortgage broker, and Argent, as the lender, failed to make proper disclosures under TILA and the Home Ownership and Equity Protection Act ("HOEPA"), including notification to Plaintiffs of their Right to Cancel, and purposefully and fraudulently misrepresented the actual nature of the loan in its Truth-In-Lending Disclosure Statement.  Compl. ¶¶18-19; 30.  In addition, as part of this "predatory lending scheme,"[2] Dana Capital switched the fixed rate loan originally promised to an adjustable rate note at closing.  Compl. ¶ 20.  Plaintiffs also allege that at closing, they were required to pay approximately $13,313 in closing costs, a sum far greater than previously disclosed by Dana Capital in the RESPA statement.  Compl. ¶ 24.  It was not until after closing that Plaintiffs discovered the terms of their refinance mortgage were radically different than those agreed to before closing, and that the 8.45% interest rate that they believed was their fixed rate was in fact an initial rate for their thirty year adjustable

---

[2]Traditionally, those who seek to take advantage of borrowers prey on the under-privileged and less educated.  See, e.g., Barr, Michael, Access to Financial Services in the 21st Century: Five Opportunities for the Bush Administration and the 107th Congress, 16 NOTRE DAME J.L. ETHICS & PUB. POL'Y 447, 455-56 (2002) ("Although varied in form, predatory lending typically entails brokers or lenders engaging in fraudulent or deceptive sales practices or encouraging borrowers--often less educated, older, and concentrated in poor communities--to take on mortgage debt on unreasonable terms that can strip the equity in their homes and threaten their financial well-being"); Kathleen Engel and Patricia McCoy, A Tale of Three Markets: the Law and Economics of Predatory Lending, 80 TEX. L. REV. 1255, 1260 (2002) (defining predatory lending as "a catalogue of onerous lending practices, which are often targeted at vulnerable populations and result in devastating personal losses, including bankruptcy, poverty, and foreclosure").  Plaintiffs may not meet that traditional profile since Mr. Patetta has been a well-to-do financial planner for over twenty five years and was seeking to refinance a mortgage for well over $600,000.

3

rate mortgage. Compl. ¶40.

Sometime thereafter, in March 2007, Plaintiffs ceased paying their mortgage. As a result, Wells Fargo, as an assignee to Argent's rights,[3] initiated a mortgage foreclosure action against Plaintiffs in New Jersey Superior Court, Chancery Division, Somerset County. On May 9, 2008, the state court entered a Final Judgment of Foreclosure against Plaintiffs. Thereafter, Plaintiffs filed a Motion to Vacate Final Judgment on March 3, 2009, which was subsequently denied by the state court on May 1, 2009. Since March 2007, Plaintiffs have continued to live at the Barton Lane property without making any of their mortgage payments.

On April 17, 2009, Plaintiffs initiated this action in New Jersey Superior Court, Law Division, Somerset County. On June 11, 2009, Defendants filed a Notice of Removal in the United States District Court for the District of New Jersey, seeking to remove the above-captioned matter to federal court. As a basis for removal, Defendants cited, pursuant to 28 U.S.C. § 1331, Plaintiffs' federal claims under TILA and RESPA and the diversity between the parties under 28 U.S.C. § 1332.[4] On June 19, 2009, Defendants

---

[3]After closing, on August 13, 2004, Plaintiffs' mortgage was sold and assigned to Ameriquest. Wells Fargo, as a Trustee for Park Place, subsequently purchased the Mortgage from Ameriquest.

[4]In their notice of removal, Defendants assert that while Plaintiffs are residents of New Jersey, they each reside in other states. According to the Complaint, Argent, Ameriquest, HomEq, Park Place, Dana Capital, and its agent Reilly are located in California. In addition, Wells Fargo, while it does business in New Jersey, maintains its principal office in Minnesota. See Compl. ¶¶ 1-8. Besides reference to Plaintiffs' allegations, Defendants do not provide supplemental support for their assertion that complete diversity is a proper basis for subject matter jurisdiction over this matter. Allegations that Defendants are located in a state or maintain a principal office in a state are insufficient to establish complete diversity for the purposes of subject matter jurisdiction: "a corporation's citizenship derives, for diversity jurisdiction purposes, from its State of incorporation and principal place of business. § 1332(c)(1). It is not deemed a

Ameriquest, Argent, and Park Place moved to dismiss Plaintiffs' claims.  Defendants Wells Fargo and Home Eq separately moved to dismiss Plaintiffs' Complaint on July 23, 2009, but joined with Ameriquest, Argent, and Park Place in their motion to dismiss on statute of limitation grounds.  For the reasons that follow, the Court dismisses Plaintiffs' TILA, RESPA, NJRICO, and negligence claims as time barred under the applicable statute of limitations and Plaintiffs' breach of fiduciary duty claims for failure to state a claim.

## II. DISCUSSION

### A. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard.  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of

---

citizen of every State in which it conducts business or is otherwise amenable to personal jurisdiction." Wachovia Bank v. Schmidt, 546 U.S. 303, 318 (2006); J & R Ice Cream Corp. v. California Smoothie Licensing, 31 F.3d 1259, 1265 n. 3 (3d Cir. 1994) (finding that allegations that a corporation maintained a principal place of business in a state were insufficient to establish diverse citizenship of a corporate defendant).  Thus, Defendants shall have ten days from the entry of this Opinion and Order to demonstrate complete diversity exists in this case by indicating their place of incorporation and principal place of business.  In the event there is not complete diversity, the Court shall at that time determine whether it will retain supplemental jurisdiction over the remaining state claims.

facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating … a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948-49 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1949.

**B. Truth-In-Lending Act**

Before turning to the merits of Plaintiffs' federal claims, the Court must determine whether Plaintiffs' Complaint was timely filed within the relevant limitations period. Plaintiffs concede that the statute of limitations for their TILA and RESPA claims have long expired. See Pls.' Br.p. 2. Nonetheless, Plaintiffs ask this Court to consider Plaintiffs' federal claims because there is a question of fact as to when Plaintiffs became aware of

Defendants' statutory violations.[5]  Because Plaintiffs' prayer for relief under TILA seeks a right of rescission and damages under the Act, and each are codified under separate provisions, 1635(f) and 1640(e) respectively, the Court will discuss each in turn.

The purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).  To that end, the Act provides that "a borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms accurately."  Beach v. Ocwen Fed. Bank, 523 U.S. 410, 411 (1998) (citing 15 U.S.C. § 1635).  This right of rescission, codified at section 1635(f), expires three years after the date of consummation of the transaction, regardless of when the borrower becomes aware that a lender may have failed to make the necessary disclosures. 15 U.S.C. § 1635. Unlike the one year limitation on an action for damages, "[s]ection 1635(f). . .takes us beyond any question whether it limits more than the time for bringing suit, by governing the life of the underlying right as well. . . .It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as

---

[5]Plaintiffs do not argue that the statute of limitations for damages under TILA was equitably tolled by any specific misconduct on the part of Defendants.  Where a plaintiffs fails to raise equitable tolling in its opposition to a motion to dismiss, courts retain the authority to dismiss those claims as barred by the applicable statute of limitations.  See Nix v. Option One Mortgage Corp., No. 05-03685, 2006 WL 166451, at *9 (D.N.J. Jan. 19, 2006) (dismissing a plaintiff's TILA claim for damages for failure to raise equitable tolling as a defense to defendant's motion to dismiss); Bey v. DaimlerChrysler Services of North America, LLC, No. 04-6186, 2005 WL 1630855, at *4 (D.N.J. July 8, 2005) (dismissing a pro se plaintiff's TILA damages claim because he failed to raise equitable tolling).  Though Plaintiffs fail to articulate in their opposition to the pending motions that equitable tolling should apply, the Court will consider whether the limitations defense saves Plaintiffs' TILA and RESPA claims.

to render any limitation on the time for seeking a remedy superfluous." Beach, 523 U.S. at 418; see also Doss v. Clearwater Title Co., 551 F.3d 634, 638 (7th Cir. 2008) (characterizing section 1635(f) as a statute of repose); Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 504 (3d Cir. 1998). Hence, the equitable tolling doctrine, while relevant in limited circumstances to a claim for damages under TILA, cannot revive an untimely petition for rescission.[6] Here, Plaintiffs consummated their loan transaction with Dana Capital on or about August 6, 2004. Thus, any claim for a right of rescission would have expired in accordance with section 1635(f) on August 6, 2007, no matter when Plaintiff became cognizant of a possible TILA violation. Since Plaintiffs did not file this cause of action until April 17, 2009, Plaintiffs' petition for rescission is time barred by section 1635(f)'s statute of repose.

In addition to an order compelling rescission, Plaintiffs seek actual and statutory damages under TILA. It is undisputed that a TILA claim for damages has a one year statute of limitations and that the period begins to run from the date the loan closed. Failure to comply, however, may be excused under the doctrine of equitable tolling: "The Third Circuit has held that TILA's statute of limitations is subject to equitable tolling in certain circumstances." Kemezis v. Matthew, No. 07-5086, 2008 U.S. Dist. LEXIS 47330, at *11 (E.D. Pa. June 16, 2008) (citing Ramadan, 156 F.3d at 504-505). The court in Kemezis laid out three situations when equitable tolling may salvage a plaintiff's TILA claims in the

---

[6]Courts often refer to section 1635's three year time limit as a statute of repose, rather than a statute of limitations, the difference being that unlike a statute of limitations, a claim subject to a statute of repose extinguishes when the time allotted runs, irrespective of any limitations defense, i.e. equitable tolling. See In re Community Bank of Northern Virginia, 467 F. Supp. 2d 466 (W.D. Pa. 2006); Kemezis, 2008 U.S. Dist. LEXIS 47330, at *11; In re Roberson, 262 B.R. 312 (Bkrtcy. E.D. Pa. 2001).

interest of justice:

> Three scenarios exist when equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. [Oshiver, 38 F.3d at1387]. A party seeking tolling must also demonstrate that he or she "exercised reasonable diligence in investigating and bringing the claims." Miller v. N.J. Dep't of Corrections, 145 F.3d 616, 618-19 (3d Cir. 1998).

Kemezis, 2008 U.S. Dist. LEXIS 47330 at *11. It is incumbent upon the party seeking to equitably toll the relevant limitations period to demonstrate that he or she "exercised reasonable diligence in investigating and bringing the claims." Wise v. Mortgage Lenders Network USA, Inc., 420 F. Supp. 2d 389, 394 (E.D. Pa. 2006) (quoting Miller v. N.J. Dep't of Corrections, 145 F.3d 616, 618-19 (3d Cir. 1998).

The latter two justifications for equitable tolling are not relevant here. The crux of Plaintiffs' claims is that they were duped into entering a borrowing arrangement, that the loan they received was an adjustable, and not a fixed, rate one as agreed to before closing, and it was not until sometime later that they realized they were the victim of underhanded lending tactics. While Plaintiffs admit that the one year statute of limitations for damages under TILA has technically expired, the mortgage broker's fraudulent misrepresentations, the bait and switch, precluded Plaintiffs from realizing that they were the victim of a predatory lending scheme.[7] The Court disagrees. For support, the Court must look no

---

[7] As is the case whenever a plaintiff attempts to plead fraud, Plaintiffs here must satisfy the heightened pleading requirement under Federal Rule of Civil Procedure 9(b): "'[a]llegations of fraudulent concealment tolling the statute of limitations must meet the requirements of Federal Rule of Civil Procedure 9(b).'" Marangos v. Swett, No, 07-5937, 2008 WL 4508542, at *6 (D.N.J. Sept. 29, 2008) (quoting Andrew v Ivanhoe Financial, Inc., No. 07-729, 2008 U.S. Dist. LEXIS 42860 at *14 (E.D. Pa. May 30, 2008) (citation omitted)). In Lum v. Bank of Am., the Third Circuit expounded on the heightened pleading standard imposed on allegations of fraud:

9

further than Plaintiffs' Complaint to determine when that sometime later was: "<u>After the closing</u>, the plaintiffs realized the terms of the subject mortgage were different than what had previously been promised to them by the defendants." Pl.'s Compl. ¶ 40. The closing, which occurred on August 6, 2004, was nearly five years before the above-captioned matter was initiated. By Plaintiffs' own allegations, the fraudulent concealment that masked Defendants' collective scheme only lasted through closing. Thus, it is apparent to the Court that the fraud that prevented Plaintiffs from discovering Dana Capital's fraudulent scheme ceased at closing, at which point, Plaintiffs could have discovered that something was awry.

Notwithstanding, Plaintiffs conceded in a certification submitted to the state court that at the very least, they were aware that their mortgage was not what was originally

---

> In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Id. (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject of alleged fraudulent transactions and the nature and subject of the alleged misrepresentations). Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation. See [Saporito v. Combustion Eng'g, 843 F.2d 666, 675 (3d Cir. 1988)]; Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658-59 (3d Cir. 1998); Klein v. General Nutrition Cos., 186 F.3d 338, 345 (3d Cir. 1999).

<u>Lum v. Bank of Am.</u>, 361 F.3d 217, 223-24 (3d Cir. 2004). At the very minimum, Plaintiffs were required to plead the who, what, where, and when of the purported fraud that prevented Plaintiffs from discovering the fraudulent misconduct. The Complaint is devoid of these basic allegations, namely when the fraudulent misconduct occurred and for how long Plaintiffs were prevented from discovering the predatory lending scheme that left them with an undesirable and consequentially unmanageable adjustable rate mortgage.

agreed to approximately two years after the closing: "After making the monthly payments for about two years, Home Eq Servicing Corp. . . . mailed us a letter regarding the rate change on my loan, and that my monthly payments were going to increase to about $7,000. <u>It was then that I first had an idea that I had an adjustable rate loan.</u>"  At that point, the onus was on Plaintiffs to diligently inquire as to why the loan they had been paying for two years was appreciably different than the one they thought they had agreed to, not sit idly by while they lapsed into foreclosure.  Thus, even if the statute of limitations were tolled until sometime around August 2006 - - two years after the closing - - Plaintiffs' TILA claim for damages ran as of August 2007.  Given that Plaintiffs did not initiate this action under April 17, 2009, Plaintiffs may not recover damages under TILA.  Accordingly, Plaintiffs' claims under TILA are dismissed as time-barred under the relevant limitations periods.

### C. Plaintiffs' RESPA claims

Plaintiffs also allege violations of RESPA, 12 U.S.C. § 2601 <u>et seq</u>, for Dana Capital's imposition of costs and fees at closing that far exceeded those originally disclosed in Reilly's good faith estimates, Defendants' collection of fees for work they did not actually perform, and Dana Capital's failure to make proper disclosure in the mandatory RESPA statements. Defendants, again, assert the statute of limitations as a bar to Plaintiffs' RESPA claims.

 "The RESPA is designed to ensure that consumers are made aware of settlement procedures and costs by imposing certain disclosure requirements, and to eliminate kickbacks and referral fees that increase the cost of the settlement process." <u>Morilus v. Countrywide Home Loans, Inc.</u>, No. 07-900, 2008 WL 5377627, at *10 (E.D. Pa. Dec. 22, 2008) (citing12 U.S.C. § 2601(b)). Section 2614 of RESPA provides the applicable statute of

11

limitations for its enforcement provisions:

> Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation, except that actions brought by the Secretary, the Attorney General of any State, or the insurance commissioner of any State may be brought within 3 years from the date of the occurrence of the violation.

12 U.S.C. § 2614.  Essentially, Plaintiffs are alleging that the increased closing costs were not properly disclosed before closing, that the increased closing costs represent improper fees for work not actually performed, otherwise described as a "kickback" under the Act, and that the RESPA statement due before closing misrepresented the amount of closing costs associated with Plaintiffs' refinance mortgage. Without reaching the merits of Plaintiffs' RESPA claim, the Court finds that the relevant limitations periods have expired. If this Court takes Plaintiffs' allegations as true, Plaintiffs were aware at closing that the closing costs had increased, as evidenced in the allegedly deficient RESPA statement they received <u>before</u> closing , compared with the actual costs paid at closing.  Moreover, Plaintiffs do not assert any reason that RESPA's statute of limitations should be equitably tolled.  See <u>Ramadan</u>, 156 F.3d at 503 (citing courts that equitably tolled in RESPA cases). Since it has been over three years since Plaintiffs became aware of the closing costs associated with their mortgage, Plaintiffs' RESPA claim is dismissed as untimely.

### D. Plaintiffs' NJRICO Claims

Turning to the state law claims, Defendants contend that Plaintiffs' NJRICO claim were time-barred as of August 6, 2008, four years from the date the claim accrued, the closing of Plaintiffs' mortgage.  In an effort to save their claims, Plaintiffs assert that the

accrual of their cause of action under NJRICO is tolled by New Jersey's injury discovery rule.

Although the statute does not plainly denote a specific limitations period, it is well-settled that a four year statute of limitations applies to NJRICO claims.  Cetel v. Kirwan Financial Group, Inc., 460 F.3d 494, 510 (3d Cir. 2006) (citing State v. Ball, 141 N.J. 142 (1995)) (holding that because the NJRICO statute mirrors the federal statute, the four year statute of limitations applies to both RICO and NJRICO claims) .  Though Plaintiffs concede that a four year statute applies, they contend that under New Jersey's discovery rule, the period did not begin to run until well after closing on August 6, 2004, at which point they discovered they were the victims of a complicated predatory lending scheme.

Similar to the doctrine of equitable tolling,[8] New Jersey "provides that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim."Lopez v. Swyer, 62 N.J. 267, 272 (1973).

---

[8]Plaintiffs solely rely on Mathews v. Kidder, Peabody & Co. Inc., 260 F.3d 239, 250 (3d Cir. 2001).  There, in the context of a federal RICO claim, the Third Circuit found "that a RICO claim accrues when the plaintiffs should have discovered their injuries." Id. Looking to principles first set forth in the securities fraud context, the Mathews court noted that unlike securities fraud, where the focus is on the acts of the defendant, RICO claims compel discussion of what the plaintiffs should have known at the time their claim accrued.  Id. (internal citation and quotations omitted)  ("the focus of accrual in a RICO action is different from that for a fraud claim where the focus is on the acts of the defendants").

Obviously, Plaintiffs do not assert claims under the federal RICO statute but seek relief under New Jersey's adaptation.  The legislative history reveals that New Jersey's RICO statute incorporates the basic parameters of the federal RICO law. Cetel v. Kirwan Financial Group, Inc., 460 F.3d 494, 510 (3d Cir. 2006) (finding that the legislative history evinced an intent on the part of New Jersey legislators to import federal RICO principles into state statute). Therefore, even without citation to New Jersey case law, it would be reasonable to assume and extend the discovery rule to claims brought under NJRICO.

13

A rule of equity, the discovery rule prohibits the sometimes harsh and draconian application of statute of limitations where a party could not conceivably be aware of his or her rights. Martinez v. Cooper Hospital-University Medical Center, 163 N.J. 45, 52 (2000). The rule, however, does not relieve a plaintiff of assiduously inquiring and pursuing his claims where the facts reveal a cause of action may lie. Baird v. American Med. Optics, 155 N.J. 54, 66,(1998). Where the doctrine is asserted, oftentimes the question is whether the facts as alleged would alert a reasonable person exercising ordinary diligence that he or she may have suffered an injury as a result of the acts of another.  See Martinez, 163 N.J. at 52.  "That the damages may be uncertain does not delay accrual." Vision Mortgage v. Chiapperini, 156 N.J. 580, 586 (1999).

  Again, Plaintiffs' allegations concern the consummation of a refinance mortgage under false pretenses.  The fraud perpetrated, and the defendants' actions in concealing this scheme, ceased on August 6, 2004, when Plaintiffs received the terms of the dramatically different mortgage.  By Plaintiffs' own admission, "[a] cursory review of the loan documents [at closing] would reveal the predatory lending scheme." Compl. 20.  In short, all of Plaintiffs' claims, federal and state, share a common factual thread, that agents of Dana Capital surreptitiously concealed up until closing the nature of the arrangement between the parties in an effort to swindle and defraud Plaintiffs.   That Plaintiffs, with ordinary diligence, could have discovered they were the unfortunate victims of a nefarious and illegal predatory lending scheme precludes tolling under the discovery rule beyond that date.  Thus, any cause of action arising from the facts as alleged in Plaintiffs' Complaint accrued on August 6, 2004, when Plaintiffs could have, but chose not to, further inquire as to why the loan they received drastically differed from the one they

14

agreed to.  Accordingly, Plaintiffs' NJRICO claim is dismissed as time barred under the four-year statute of limitations.

### E. Plaintiffs' Negligence Claims

In Counts VI and X, Plaintiffs allege that Defendants, under a theory of respondeat superior, are responsible for the negligence of their employees.  More specifically, the allegations of negligence concern Defendants' actions in negligently training, hiring, and supervising their employees. Again, Defendants assert the applicable statute of limitations as a defense to these claims.

Under New Jersey law, negligence claims are governed by a two-year statute of limitations:

> Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person with this State shall be commenced within two years next after the cause of any such action shall have accrued.

N.J.S.A. 2A:14-2(a); see also Mansour v. Leviton Mfg. Co., Inc., 382 N.J.Super. 594, 596 (App. Div. 2006) (stating that a professional malpractice claim was governed by N.J.S.A. 2A:14-2); McGrogan v. Till, 327 N.J.Super. 595 (App. Div. 2000). However, much like NJRICO claims, see supra, the accrual of a cause of action for negligence may be equitably tolled under the discovery rule.  See  County of Morris v. Fauver, 153 N.J. 80, 109 (1998). (noting that "the discovery rule applied most frequently in personal injury or negligence-type actions, which by their nature are often self-concealing or undiscoverable"); Szczuvelek v. Harborside Healthcare Woods Edge, 182 N.J. 275 (2005) (requiring consideration of the discovery rule in medical malpractice context).

Plaintiffs solely rely on the New Jersey Supreme Court's decision in Vision Mortgage v. Chiapperini, 156 N.J. 580 (1999) in an effort to save their claims from the two

year statute of limitations. A close reading of Vision Mortgage, however, reveals nothing to advance Plaintiffs' argument that the discovery rule tolls the accrual of their negligence claims until sometime in 2008. In Vision Mortgage, the New Jersey Supreme Court held that the accrual for a cause of action of professional malpractice accrues on the date that the plaintiff knew or should have known that he or she suffered an injury attributable to the negligent acts of another. Id. at 585-86. In particular, a cause of action for professional malpractice against a property appraiser accrued "when the mortgagee knows or has reason to know that its collateral has been impaired or endangered by the negligent appraisal." Id. at 586. It would be at that time, the Vision Mortgage Court noted, that the homeowner would be aware that he or she has suffered an injury. Id. Relying on Vision Mortgage, Plaintiffs baldly assert that it is a question of fact as to when they became aware that they were the victim of Defendants' collective scheme.

     First, as a purely factual matter, Plaintiffs do not allege anywhere in their Complaint that they were the victims of a negligent appraisal, rendering the essential holding of Vision Mortgage inapplicable. To the contrary, the thrust of Plaintiffs' allegations are that Defendants intentionally defrauded Plaintiffs and these actions were taken with the intent to further a predatory lending scheme. Second, even assuming that Plaintiffs do allege professional malpractice on the part of the agents and parties responsible for the faulty appraisal, nonetheless, that claim accrued on the date of the closing, where it became evident that the property with which the mortgage was secured was encumbered with a loan dramatically different than the one originally agreed to by the parties. Indeed, nothing in the Complaint suggests that Defendants took any action beyond the closing to conceal the fraudulent conduct. Moreover, Plaintiffs' argument

necessarily reads out the objective element of the discovery rule, i.e. the "should know," which compels a potential plaintiff to employ <u>ordinary</u> diligence in the investigation of any possible claims.  To that end, Plaintiffs insist that this Court toll the statute of limitations when, admittedly, the full nature of the fraud came into view at the closing.   A better analysis of the applicable law leads this Court to conclude that the discovery rule does not operate to save claims that would have been obvious upon a reasonable person's haphazard review of loan documents received at the mortgage closing on August 6, 2004. <u>See</u> Compl. ¶ 20.  Accordingly, Plaintiffs' claims of negligence are time-barred under the two-year statute of limitations. The Court agrees.

**F. Breach of Fiduciary Duty**

Finally, Defendants seek to dismiss Plaintiffs' claim of a breach of fiduciary duty. Citing the general rule that a creditor does not act as a fiduciary to a debtor, Defendants contend that the facts as alleged in Plaintiffs' Complaint do not give rise to a cognizable breach of fiduciary duty claim.

"Creditor-debtor relationships. . .rarely are found to give rise to a fiduciary duty." <u>Paradise Hotel Corp. v. Bank of Nova Scotia</u>, 842 F.2d 47, 53 (3d Cir. 1988) (citing  <u>Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank</u>, 731 F.2d 112, 122 (2d Cir. 1984)); <u>United Jersey Bank v. Kensey</u>, 306 N.J.Super. 540, 552 (App. Div. 1997) (finding virtual unanimity amongst state jurisdictions that no fiduciary relationship exists between a bank and its customers).  To that end, the presumption that there is no fiduciary duty between a borrower and a lender has been universally embraced by New Jersey courts.  <u>See</u>, <u>e.g.</u>, <u>Margulies v. Chase Manhattan Mortgage Corp.</u>, 2005 WL 2923580, at *3 (N.J. App. Div. Nov. 7, 2005) (affirming superior court's decision that garden variety financing and

17

refinancing between a bank and its customer, without more, does not give rise to a fiduciary duty); United Jersey Bank, 306 N.J.Super. at 552; Globe Motor Car Co. v. First Fidelity Bank, N.A., 273 N.J.Super. 388, 393 (Law Div. 1993).  It would be, as other courts have noted, antithetical to the often adversarial and contentious nature of the borrower-lender relationship to impose a fiduciary duty on the lender. See Paradise Hotel, 842 F.2d at 53 (internal quotations and citation omitted) (holding it "would be anomalous to require a lender to act as a fiduciary for interests on the opposite side of the negotiating table").

Here, bald assertions that a duty was owed will not carry the day.  Plaintiffs do not identify any exceptional facts, or case law for that matter, that would support taking their breach of fiduciary duty claim out of the heartland of those in which courts have consistently declined to impose a fiduciary duty upon a lender.  As alleged in the Complaint, the negotiation and arrangement between Plaintiffs and their lender was conducted at arms-length.  Nothing in the Complaint suggests otherwise, namely that Defendants were acting in any other interest than their own when they consummated the refinance agreement.  See United Jersey Bank, 306 N.J.Super. at 552 (finding no sound basis to depart from the general rule). Without allegations to that effect, such as an explicit understanding between Defendants and Plaintiffs that Defendants and their agents were acting and giving advice for the benefit of Plaintiffs, Plaintiffs' Complaint cannot overcome the heavy presumption that a lender-borrower arrangement is not ordinarily a special relationship subject to a fiduciary duty.  Accordingly, Plaintiffs' breach of fiduciary duty claim is dismissed.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' TILA, RESPA, negligence, and NJRICO claims

are dismissed as they are time-barred under the relevant statute of limitations periods. Further, Plaintiffs' claim for breach of fiduciary duty is dismissed.  As such, Plaintiffs' NJCFA claim (Count II), common law fraud claim (Count IV), unconscionability claim (Count V), unjust enrichment claim (Count VII), and breach of contract claim (Count VIII), still remain.   Finally, each Defendant shall have ten days from the entry of this Court's Opinion and Order to demonstrate it maintains its principal place of business in a state other than New Jersey and that it is incorporated in a state other than New Jersey.


Dated September 9, 2009                         /s/ Freda L. Wolfson
                                                Freda L. Wolfson, U.S.D.J.