NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ | : | |
| RONALD PATETTA; ROSEMARY | : | Civil Action No. 09-2848 |
| PATETTA, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WELLS FARGO BANK, NA, et al., | : | |
| Defendants. | : | |
| _____ | : | |

WOLFSON, UNITED STATES DISTRICT JUDGE

This case arises from a dispute over the terms and obligations of a refinance mortgage issued to Plaintiffs Ronald and Rosemary Patetta ("Plaintiffs" or "the Patettas") in 2004. Plaintiffs' original twelve-count complaint was filed in the Superior Court of New Jersey, Law Division, Somerset County, against Defendants Argent Mortgage Company, LLC ("Argent"), Wells Fargo Bank NA ("Wells Fargo"), Ameriquest Mortgage Company ("Ameriquest"), Park Place Securities, Inc., ("Park Place"), HomeEq Servicing Corporation ("HomeEq"), Matthew Reilly, and Dana Capital Group, Inc. ("Dana Capital")[1] (collectively "Defendants"). Defendants Ameriquest, Park Place, and Argent subsequently removed to this Court.

_____

[1] Defendants Matthew Reilly and Dana Capital have failed to make an appearance or move to dismiss Plaintiffs' Complaint. Nevertheless, because what remains of Plaintiffs' complaint is dismissed according to applicable principles of Rooker-Feldman abstention and claim preclusion, Defendants Matthew Reilly and Dana Capital are dismissed as well. The same holds true for Defendants John Does 1-12 and ABC Corporations 1-12.

Defendants Wells Fargo and HomeEq now move to dismiss on <u>Rooker-Feldman</u> and claim preclusion grounds.   For the reasons that follow, Defendants' motion is granted.

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are the owners of residential property located at 509 Barton Lane, Neshanic Station, New Jersey. (Compl. at ¶1).  Desiring to refinance the Barton Lane Property, Plaintiffs worked with Dana Capital, and its employee Matt Reilly, to secure a lower rate mortgage with fixed terms that did not contain a prepayment penalty. <u>Id</u>. at ¶15.  Defendant Dana Capital served as the mortgage broker of Plaintiffs' loan, <u>Id</u>. at ¶4, and Matthew Reilly, was its employee.  <u>Id</u>. at ¶5.

Reilly arranged an appraisal of the Barton Lane Property and provided Plaintiffs with a good faith estimate. <u>Id</u>. at ¶16. After reviewing the relevant documents, Plaintiffs believed they were receiving a mortgage with an interest rate of 8.25%, payable over the thirty-year lifetime of the loan in $4,200 a month installment payments. <u>Id.</u> at ¶17. On or about August 6, 2004, Plaintiffs executed a Note in the amount of $648,750, payable to Argent, the originating lender. [2] <u>Id</u>. at ¶¶13-14. At closing, Plaintiffs were represented by an attorney, who upon reviewing the closing documents, informed his clients that the mortgage contained no hidden clauses or prepayment penalties. <u>Id</u>. at ¶¶31-32.

_____

[2]      The remaining named defendants' roles include that of the originating lender, Argent, <u>id</u>. at ¶2, and mortgage assignee, Ameriquest, who assigned the mortgage and note to Wells Fargo, <u>id</u>. at ¶¶ 3, 6.  Defendant Park Place was an owner of the securitized interest of Plaintiffs' mortgage and note, which was later sold as an asset-backed security. <u>Id</u>. at ¶7.  Defendant HomeEq is the current servicer of Plaintiffs' loan. <u>Id</u>. at ¶8.

Despite being represented by counsel at closing, Plaintiffs allege that the loan they received was not what they had originally bargained for, and that Dana Capital, as the mortgage broker, and Argent, as the lender, failed to make proper disclosures under the Truth in Lending Act, 15 U.S.C. § 1601, et seq., ("TILA") and the Home Ownership and Equity Protection Act, 15 U.S.C. § 1639 et seq., ("HOEPA"), including notification to Plaintiffs of their right to cancel.  Compl. at ¶ 12, 76.  They, further, allege that Argent purposefully and fraudulently misrepresented the actual nature of the loan in its Truth-in-Lending Disclosure Statement. Id. at ¶¶18-19, 30. In addition, as part of this predatory lending scheme, Plaintiffs allege that Dana Capital switched the fixed rate loan originally promised to an adjustable rate note at closing. Id. at ¶20. Plaintiffs further allege that, at closing, they were required to pay approximately $13,313 in closing costs—a sum far greater than previously disclosed by Dana Capital in the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq., ("RESPA") statement. Id. at ¶24. It was not until after closing that Plaintiffs discovered the terms of their refinance mortgage were radically different than those agreed to before closing, and that the 8.45% interest rate that they believed was their fixed rate was in fact an initial rate for the thirty-year adjustable rate mortgage. Id. at ¶40.

Alleging that Plaintiffs defaulted on their mortgage, Wells Fargo, as assignee to Argent's rights, initiated a mortgage foreclosure action against Plaintiffs in New Jersey Superior Court, Chancery Division, Somerset County, in November 2006. Certification of David H. Kaplan, Esq. ("Kaplan Cert."), Ex. B ("Foreclosure

Compl."). Mr. Patetta initially represented himself and his wife *pro se* in the foreclosure matter. See Kaplan Cert., Ex. D ("Patetta Cert.") ¶ 32. In January 2007, he filed an Answer to the Foreclosure Complaint, asserting several defenses including, *inter alia*, "inducement," "deception," and "duress." Certification of Vincent DiMaiolo, Jr., Esq. ("DiMaiolo Cert."), Ex. C ("Foreclosure Answer").

That next month, in February 2007, Wells Fargo moved for summary judgment on its foreclosure complaint and to strike Mr. Patetta's Answer.[3] Wells Fargo did not specifically address any of Plaintiff's asserted defenses in its moving papers on that motion. See DiMaiolo Cert., Ex. D ("Brief in Support of Motion for Summary Judgment"). On November 2, 2007, the Superior Court granted summary judgment to Wells Fargo and struck Mr. Patetta's Answer by way of Order. See DiMaiolo Cert., Ex. E ("Order Granting Summary Judgment and Striking Answer") at 1.[4] The court heard oral argument but it is not clear to what degree the court

---

[3]     Plaintiffs' counsel, however, has erroneously certified to this Court that there was no summary judgment—only a motion to vacate the final judgment, as discussed *infra*. Kaplan Cert. at ¶ 6 ("There was no Summary Judgment in this case. Instead, there was a Motion to Vacate Final Judgment."). Perhaps because counsel did not initially represent the Patettas in the foreclosure action at the summary judgment stage, he was not familiar with the proceeding. Even so, the court would expect, in the future, that counsel will familiarize himself with the entire proceeding before making representations to this court as to the nature and extent of those proceedings.

[4]     New Jersey's resident foreclosure expert, Myron C. Weinstein, Esq., former chief of the Office of Foreclosure, explains:

> In a foreclosure action in New Jersey, there is a unique practice with respect to filed answers, called the "uncontested answer practice." An answer is deemed contested if it disputes the validity or priority of plaintiff's

stated reasons on the record for its denial.  <u>See</u> Certification of Vincent DiMaiolo, Jr., Esq. in Support of Motion to Dismiss ("DiMaiolo Motion to Dismiss Cert."), Ex. B ("Stenographic Transcript of Excerpt from Motion to Vacate Final Judgment") at 3.  Neither did a written opinion follow.  That said, and as in explained more detail below, the record is unclear as to the means by which the court expressed its summary judgment ruling.  It is clear, however, that Mr. Patetta opposed the motion.  <u>See</u> Stenographic Transcript of Excerpt from Motion to Vacate Final Judgment at 3.

The Superior Court entered a Final Judgment on May 9, 2008.  <u>See</u> Kaplan Cert., Ex. D ("Notice of Motion to Vacate Final Judgment") at 1.  Mr. Patetta then filed for bankruptcy protection in July 2008.  Patetta Cert., ¶ 34.  On January 13, 2009, the Property was discharged from the bankruptcy.  <u>Id.</u> at ¶ 40.  A Sheriff's sale of the property was scheduled for March 24, 2009.  <u>See</u> Kaplan Cert. at 1.  Just

---

> mortgage or lien and creates an issue with respect thereto; *only contested foreclosure answers are listed for trial and placed on the general equity calendar* . . . An uncontested answer, on the other hand, does not require action by the vicinage chancery judge and permits plaintiff to proceed, on motion, before the Office of Foreclosure for an uncontested judgment pursuant to the rule.

30A N.J. Prac. Law of Mortgages § 30.32.  As in Mr. Patetta's case, "after [a] contested answer or answers are stricken by the vicinage judge . . . , the action becomes uncontested . . . and the Office of Foreclosure has jurisdiction to enter final judgment."  30A N.J. Prac. Law of Mortgages § 31.2.  Technically, the Office of Foreclosure does not enter the judgment but recommends to the Chancery Judge that judgment be entered and forwards the order or judgment for his or her signature.  30A N.J. Prac. Law of Mortgages § 31.13.

prior to the March 24th Sheriff's sale date, on March 4, 2009, Plaintiffs moved to vacate the foreclosure judgment or, in the alternative, file an answer.  Id.  At this juncture, the Patettas were represented by counsel.

In connection with Plaintiff's motion to vacate before the Superior Court, Mr. Patetta asserted that he was a victim of "aggressive sales tactics."  Kaplan Cert., Ex. D ("Certification of Ronald Patetta") ¶ 11.  Defendant Reilly, he alleged, "made it clear that there was an urgency to closing the loan and signing the documents." Id.  Mr. Patetta, further, asserted that "the loan officer and the lender intentionally made misrepresentation of facts and manipulated data in order to qualify [him] for a loan that they knew or should have known exceeded [his] ability to pay and to maximize fees and costs payable to the broker and lender."  Id. at ¶ 43.  According to Mr. Patetta, the counsel who represented him at the closing reviewed the documents and confirmed only that "there were no hidden clauses or prepayment penalty."  Id. at ¶ 15.  Once the papers were signed, Mr. Patetta continued, he and his wife "did not get the interest rate we were told," id. at ¶ 20, and they "incurred substantial fees that [they] should not have incurred," id. at ¶ 23.

Mr. Patetta's counsel on the motion to vacate argued that Wells Fargo and the other mortgagees committed fraud and that newly discovered evidence, suggesting Wells Fargo was not the actual owner of the note and assignee of the mortgage, justified a vacatur of the foreclosure judgment.  Kaplan Cert., Ex. D ("Brief in Support of Defendant's Motion to Vacate Final Judgment") at 1-4.  One of the arguments advanced by counsel was that the Patettas were entitled to relief

from the final judgment because there were "meritorious defenses." <u>Id.</u> at 15. These defenses included "deceptive, misleading, fraudulent, and otherwise unconscionable business practices in violation of State and Federal Statutes and the common law." <u>Id.</u> Counsel, further, noted that "[f]raud in the inducement of the loan is a recognizable defense to a mortgage foreclosure action." <u>Id.</u> at 17.[5]

While the motion to vacate was pending, Plaintiffs filed a separate civil complaint in the Superior Court on April 17, 2009 ("the civil action").[6] Plaintiffs brought several claims:  I. Violations of the Truth-in-Lending Act ("TILA"); II. Violations of the New Jersey Consumer Fraud Act ("NJCFA"); III. Violations of the New Jersey RICO Act ("NJ RICO"); IV. Common Law Fraud; V. Unconscionability; VI. Negligence; VII. Unjust Enrichment; VIII. Breach of Contract; IX. Violation of RESPA; X. Negligence of Settlement Agent and other Defendants; XI. Breach of Fiduciary Duty; and XII. Breach of Covenant of Good Faith and Fair Dealing.

The motion to vacate was subsequently denied by the Superior Court on May 1, 2009 in an oral opinion.  <u>See</u> Kaplan Cert., Ex. D ("Order Staying Sheriff's Sale

---

[5]    In its oral decision on the motion to vacate, described *infra*, the court recounted the procedural history of the case as follows: "Defendant does not dispute his default in 2006 . . . Defendant contested the foreclosure.  On Plaintiff's motion for summary judgment and after oral argument, the Court struck Defendant's Answer and judgment resulted.  Now after two bankruptcy filings, as the Sheriff's sale of the property approaches, Defendant seeks to vacate the final judgment and essentially restart the foreclosure clock."  <u>Id.</u>  The court, further, expressed its preference for issuing written decisions but noted that "because of many foreclosure cases, it's just not physically possible."  <u>Id.</u>

[6]    One copy of the Complaint submitted to the Court denotes the filing date as April 28, 2009.  <u>See</u> Notice of Removal, Ex. A ("Complaint and Jury Demand").  Whether the complaint was filed April 17th or April 28th has no effect on the disposition of this motion.

and Directing Mediation").  In its decision, the Superior Court addressed Plaintiffs'
fraud allegations, which were intertwined with their TILA claim, along with
Plaintiffs' argument that Wells Fargo was not the true assignee of the note and
holder of the mortgage.  <u>See</u> Stenographic Transcript of Excerpt from Motion to
Vacate Final Judgment ("Motion to Vacate Transcript") at 7-12.  According to the
court, Mr. Patetta "used the purported mislabeling of the note as a fixed-rate
instrument in the TILA Disclosure to support a common-law fraud defense."  <u>Id.</u> at
12.  Noting that "fraud can serve as a defense to foreclosure," the court went on to
thoroughly analyze Mr. Patetta's fraud defense under New Jersey law.[7]  The court

---

[7]     The bulk of the court's analysis is as follows:

> Defendant [Mr. Patetta] is correct that fraud can serve as
> a defense to foreclosure, although generally such a
> defense only lies when the mortgagee can be charged with
> at least constructive knowledge of the fraud.  Fraud,
> however, even in an equitable case, requires a
> misrepresentation of a presently existing or past fact
> material to the contract;  an intention that the other
> person rely on it; reasonable reliance thereon by the other
> person; and resulting damages.  Since there was no
> misrepresentation on the TILA disclosure, it could not
> have been a basis for fraud.  Neither does anything that
> Defendant alleges was represented by his broker, whose
> affiliation with Plaintiff or his predecessors has not even
> been alleged, seem like a misrepresentation of a presently
> existing or past fact material to the contract. The broker
> allegedly told him he would get him a fixed rate loan,
> would ensure that there would be no prepayment penalty,
> would keep the closing costs low, would notify Defendant
> of any changes.  These promises of future performance by
> a salesman are not actionable misrepresentations ….

<u>Id.</u> at 12-13 (internal citations omitted).

went on to reject his duress argument: "Defendant's explanation that he, an estate planner of 25 years, accompanied by a lawyer and in no apparent financial emergency, was under duress because he had been told that the promotional interest rate would expire is just not reasonable." <u>Id.</u> at 13.   Under those circumstances, the court reasoned, "the defense of duress would not lie." <u>Id.</u>

Interestingly, the court highlighted that "Defendant has already litigated the issue of fraud on Plaintiff's summary judgment motion." <u>Id.</u> at 14.  Noting that the Defendant claimed, in connection with that motion, "that he would not have signed the mortgage had he known the total amount of interest he would wind up paying over its lifetime," the court added that his "position was discussed at some length in the Court's resulting opinion."[8]  <u>Id.</u>  The court, further, relied upon judicial estoppel to reject Defendant's argument, noting that

> Defendant did not . . . claim [in connection with the summary judgment motion] that he had no knowledge whatsoever that the interest rate was adjustable as he does now.  To the extent that this constitutes a change of position, Defendant is judicially estopped from this stratagem because the Court relied on his earlier position in reaching its final judicial determination in that case.

<u>Id.</u>  Lastly, the court held that "Defendant comes to Court with unclean hands [in that] some actions on the part of Defendant have been quite unusual."  Examples of Defendant's unusual behavior, according to the court, included his attempts "to report his obligation on the note as having been procured by someone else by means

---

[8]     In response to this court's request for a copy of this summary judgment opinion, as noted *supra*, counsel certified to this court that there was, in fact, no such opinion.

of identity theft," and the filing of two unsuccessful bankruptcy petitions, *inter alia*. Id. at 15.  The court described Defendant's behavior, in this regard, as "disturbing and may be [sic] fraudulent."  Id.

Lastly, in response to a request by Plaintiffs' counsel, the court stayed the Sheriff's sale and directed that the parties participate in mediation.  Id.  To date, neither party has suggested that the Sheriff's sale has taken place.  This court contacted the Somerset County Sheriff's Office and ascertained that the Sheriff's sale is scheduled for May 18, 2010.

Several weeks after the motion to vacate was denied, Defendants removed the civil action to this court on June 11, 2009.  Shortly thereafter, Defendants Ameriquest, Argent, and Park Place moved to dismiss Plaintiffs' claims. Defendants Wells Fargo and Home Eq separately moved to dismiss Plaintiffs' Complaint on in July 2009, and joined with Ameriquest, Argent, and Park Place in their motion.  In a previous decision, this Court assumed jurisdiction over Counts I, III, VI, IX and XI under 28 U.S.C. §1331, the federal question statute, and dismissed them in their entirety because they were time-barred under the relevant statutes of limitations, and thereby granted Ameriquest's, Argent's, and Park Place's motion.[9]  Judgment was reserved on the remaining Counts until it could be

---

[9]     In this prior decision, the statute of limitations bar was clearly applicable to Plaintiffs' TILA and other similar claims.  Hence, the court did not address applicability of the Rooker-Feldman doctrine.  Upon further reflection, it is now clear to the court that jurisdictional doctrines such as Rooker-Feldman and, in certain cases, abstention doctrines such as Younger, should be first considered before a determination is made on the merits.  See U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383 (3d Cir. 2002) ("[It is the] duty of federal courts to examine

determined that this Court retained diversity jurisdiction over this matter under 28 U.S.C. §1332.  The Parties subsequently submitted certifications indicating that this Court does have diversity jurisdiction over this case.[10]  Now, the Court may rule on the remainder of Defendants Wells Fargo's and Home Eq's motion to dismiss on <u>Rooker-Feldman</u> and preclusion grounds.

II.    DISCUSSION

Defendants argue that all of Plaintiffs' claims were raised before the Superior Court of New Jersey.  As such, Defendants argue that these claims are barred by the <u>Rooker-Feldman</u> doctrine, *res judicata*, and collateral estoppel.

A.    Standard of Review

---

their subject matter jurisdiction at all stages of the litigation *sua sponte* if the parties fail to raise the issue. That obligation extends to removal cases, as well as to those originally filed in the district courts."); <u>Lazaridis v. Wehmer</u>, 591 F.3d 666, 670 (3d Cir. 2010) ("<u>Younger</u> abstention represents the sort of threshold question that may be resolved before addressing jurisdiction.") (quoting <u>Tenet v. Doe</u>, 544 U.S. 1, 6 n. 4 (2005)) (internal quotation marks omitted).  In any event, the doctrine has been held not to bar TILA and other damages claims stemming from a mortgage foreclosed in state court.  See <u>Challenger v. U.S. Bank</u>, 2009 WL 708116, *3 (D.N.J. Mar. 13, 2009), discussed in more detail *infra*.  Thus, the Court would have nonetheless been required to reach the merits of Defendants' statute of limitations challenges.

[10]    Defendants had previously alleged that Defendants were *located* in a state or maintain a principal office in a state other than the state of residence of the Plaintiffs, which was insufficient to establish complete diversity for purposes of subject matter jurisdiction: "a corporation's citizenship derives, for diversity jurisdiction purposes, from its State of *incorporation* and principal place of business." <u>Wachovia Bank v. Schmidt</u>, 546 U.S. 303, 318 (2006) (emphasis added); 28 U.S.C. §1332(c)(1). Defendants then certified that they were incorporated in states other than the state of residence of Plaintiffs. <u>See</u> Certification of Sandra M. Feltes, Esq. dated Sept. 17, 2009; Certification of Vincent D. DiMaiolo, Esq. dated Sept. 18, 2009.

In addition to the maxim that, on a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief," Phillips v. County of Allegheny, 515 F.3d 224, 233 (3rd Cir. 2008) (citation and quotations omitted), there are particular rules applicable to jurisdictional and preclusion-based motions.

1.     Jurisdictional Challenge

Jurisdictional challenges "under Federal Rule of Civil Procedure 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." Church of Univ. Broth. v. Farmington Tp. Sup'rs, 296 Fed.Appx. 285, 287-88 (3d Cir. Oct. 20, 2008) (citing Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)).[11]  As explained by the Third Circuit,

> in reviewing a facial attack, which addresses a deficiency in the pleadings, [courts] must only consider the allegations on the face of the complaint, taken as true, and any documents referenced in the complaint, viewed in the light most favorable to the plaintiff.  But when a 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, "[courts] are not confined to the allegations in the complaint . . . and can look beyond the pleadings to decide factual matters relating to jurisdiction."  In reviewing a factual attack, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case.... [N]o presumptive truthfulness attaches to plaintiff's allegations."

---

[11]     Defendants filed their motion under Federal Rule of Procedure 12(b)(6).  Jurisdictional challenges, however, should be raised under Rule 12(b)(1).  Thus, the Court will consider the jurisdictional aspect of Defendants' motion under the law applicable to that rule.

<u>Id.</u> (internal citations omitted).  A motion is considered a factual attack when the moving party attaches documents and exhibits in support of the motion.  <u>See</u> <u>Novo Nordisk v. Mylan Pharm.</u>, 2010 WL 1372437, *6 (D.N.J. Mar. 31, 2010).  In the end, "[t]he party asserting subject matter jurisdiction bears the burden of proving that it exists."  <u>Church of Univ. Broth.</u>, 296 Fed.Appx. at 288.

Here, Defendants' jurisdictional challenge, relying on the <u>Rooker-Feldman</u> Doctrine, is a factual challenge.  As illustrated by the aforesaid procedural history, Defendants attached numerous documents and exhibits to their briefs.  In response to the Court's inquiry, Plaintiffs also certified as to the state court proceedings.  Thus, the Court is "not confined to the allegations in the complaint . . . and can look beyond the pleadings to decide factual matters ...."  <u>Church of Univ. Broth.</u>, 296 Fed.Appx. at 1.

### 2.    Preclusion Challenge

In deciding motions to dismiss based on preclusion grounds, a district court may grant such a motion "*if* the predicate establishing the [preclusion] defense is apparent *from the face of the complaint*."  <u>Brody v. Hankin</u>, 145 Fed.Appx. 768, 771 (3d Cir. 2005) (emphasis in original).  The only other documents that a court may consider are those referenced in the complaint, or the judicial opinion of another court for the existence of that opinion, though not for the truth of the matter asserted.  <u>Id.</u> at 772 (quoting <u>Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.</u>, 181 F.3d 410, 426 (3d Cir. 1999)).  <u>See</u> <u>also</u> <u>McTernan v. City of York, Penn.</u>, 577 F.3d 521, 526 (3d Cir. 2009) ("In addition to the complaint itself,

13

the court can review documents attached to the complaint and matters of public record, and a court may take judicial notice of a prior judicial opinion.") (internal citation omitted). "[A] court that examines a transcript of a prior proceeding to find facts converts a motion to dismiss [on preclusion grounds] into a motion for summary judgment." Brody, 145 Fed.Appx. at 772.

With regard to this challenge, Plaintiffs' complaint clearly sets forth the causes of action alleged. Application of New Jersey's Entire Controversy Doctrine, for reasons explained in more detail *infra*, does not require consideration of the substance of the state court's decision. In my analysis, I need only note the existence of the foreclosure proceeding and apply New Jersey's Entire Controversy Doctrine jurisprudence to the "face of the complaint." Accordingly, Defendants' preclusion challenge may be decided on a motion to dismiss as opposed to summary judgment.

B.      Jurisdiction and Abstention Doctrines

1.      Rooker-Feldman

Per the Rooker-Feldman doctrine, federal district courts lack subject matter jurisdiction to review and reverse state court judgments. In re Knapper, 407 F.3d 573, 580 (3rd Cir. 2005). "[A] claim is barred by Rooker-Feldman under two circumstances; first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." Id. "[A] federal claim

is 'inextricably intertwined' with an issue adjudicated by a state court when (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment."  In re Madera, 586 F.3d 228, 232 (3d Cir. 2009) (quoting Walker v. Horn, 385 F.3d 321, 330 (3d Cir. 2004)). Where, on the other hand, the federal plaintiff presents "some independent claim, albeit one that denies a legal conclusion that a state court has reached," the doctrine does not apply.  Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 292 (2005) quoted in Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547-48 (3d Cir. 2006)).  In such an instance, jurisdiction is confirmed and the court should then consider "whether the defendant prevails under principles of preclusion."  Exxon Mobile, 544 U.S. at 292 quoted in Turner, 449 F.3d at 548.

In addition, Rooker-Feldman applies only to "state court losers . . . complaining of injuries caused by [a] state-court judgment[ ] *rendered before the district court proceedings commenced* and inviting district court review and rejection of [that] judgment."  Gary v. Braddock Cemetery, 517 F.3d 195, 201 (3d Cir. 2008) (quoting Exxon, 544 U.S. at 284) (emphasis added).  If no judgment had been reached in the state court action at the time the federal complaint was filed, there can be no "loser."[12]  Whether a judgment has been rendered in a state

---

[12]      Hence, the Rooker-Feldman doctrine "divests a federal district court of jurisdiction if the plaintiff's claim was either (1) actually litiga*ted* in state court or (2) if the claim is inextricably intertwined with the *prior* state court ruling." Lui v. Commission, Adult Entertainment, De, 369 F.3d 319, 328 n.12 (3d Cir. 2004) (citing

foreclosure action is a question of state law.  See Randall v. Bank One, 358 B.R. 145, 159 n.9 (Bankr.E.D.Pa. 2006) (in reaching its Rooker-Feldman determination, applying Pennsylvania law to determine nature of foreclosure judgment).

Courts in this circuit have held the Rooker-Feldman doctrine to bar challenges to a New Jersey foreclosure action in a series of recent cases.  Those cases involved plaintiffs seeking to:  (1) reexamine a state court's refusal to vacate a settled foreclosure-related action, see Siravo v. Country Wide Home Loan, 349 Fed.Appx. 766, 768 (3d Cir. 2009); (2) have the federal court assume jurisdiction over a post-Sheriff's sale ejectment action and enjoin the state court from adjudicating a summary judgment motion in that action, see Moncrief v. Chase Manhattan Mort. Corp., 275 Fed.Appx. 149, 152-53 (3d Cir. 2008); (3) obtain clear title, see Downey v. Perrault, 2009 WL 3030051, * 1 (D.N.J. Sept. 15, 2009); or (4) rescind the transaction, see In re Madera, 586 F.3d at 232; Ayers-Fountain, 153 Fed.Appx. at 92; Challenger v. U.S. Bank, 2009 WL 708116, *3 (D.N.J. Mar. 13, 2009).

However, the Third Circuit has declined to apply the doctrine where the record of the state court action is sparse.  See Koynok v. Lloyd, 328 Fed.Appx. 133, 137 (3d Cir. 2009).  The plaintiff in Koynok sought to challenge a local zoning board's denial of his application and the ensuing appeal.  Refusing to invoke Rooker-Feldman, the Third Circuit reasoned:

---

Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 419 (3d Cir. 2003) (emphasis added)).

> Neither the parties nor the District Court provided information or court records demonstrating what the court decided in Koynok's first state court proceeding. *To properly apply <u>Rooker-Feldman</u>, the first necessary step is to determine exactly what the state court decided.* Without information about what the state court decided, we cannot determine whether the District Court was correct in dismissing Koynok's constitutional claims as "actually decided" or "inextricably intertwined" with the issues in the state court action.

<u>Id.</u> (emphasis added).

As noted, it is the date the complaint was filed that determines, for <u>Rooker-Feldman</u> purposes, whether a judgment had been rendered.  <u>See</u> <u>Gary</u>, 517 F.3d at 201.  Here, the Superior Court granted final judgment in the foreclosure action in May of 2008—well before the instant civil complaint was filed in state court.  On the date the suit was filed, April 17, 2009, the motion to vacate had yet to be decided.  To date, the Sheriff's sale has not yet occurred.

That the foreclosure judgment had been entered is sufficient to invoke <u>Rooker-Feldman</u>.  Under New Jersey law, a mortgage foreclosure suit determines the right to foreclose and the amount due on the mortgage.  <u>Sheerer v. Lippman & Lowy</u>, 125 N.J. Eq. 93 (E. & A. 1939); <u>Central Penn Nat'l Bank v. Stonebridge, Ltd.</u>, 185 N.J.Super. 289, 302 (Ch. Div. 1982).  <u>See</u> <u>generally</u> 30A N.J. Prac. Law of Mortgages § 31.25.  The foreclosure judgment also entitles the mortgagee to recover, by way of Sheriff's sale, the amount due from the land subject to the mortgage.  <u>See</u> N.J.S.A. 2A:50-36; <u>First Union Nat'l Bank v. Penn Salem Marina, Inc.</u>, 383 N.J.Super. 562, 570 (App. Div. 2006) <u>rev'd on other grounds by</u> 190 N.J. 342 (2007).  Indeed, the terms of a mortgage foreclosure judgment will include "an order to sell

so much of the mortgaged premises as will be sufficient to satisfy the mortgage and subordinate liens . . . and that an execution issue . . . commanding the [sheriff] to make sale …."  30A N.J. Prac. Law of Mortgages § 31.25.

That certain aspects of the foreclosure process had not yet been completed by the date the complaint was filed does not, for <u>Rooker-Feldman</u> purposes, vitiate the existence of a final judgment.  New Jersey law makes clear that the foreclosure judgment is a final judgment, and the Sheriff's sale is only an execution of that judgment.  Moreover, a pending motion to vacate has no bearing on the applicability of the <u>Rooker-Feldman</u> Doctrine.  As long as there existed a final state judgment, at the time the complaint was filed, <u>Rooker-Feldman</u> may apply.  <u>Accord</u> <u>Jacobowitz v. M & T Mortg. Corp.</u>, 2010 WL 1063895, *2 (3d Cir. Mar. 24, 2010) ("The Rooker-Feldman doctrine, which precludes lower federal courts from exercising appellate jurisdiction over *final* state-court judgments, is implicated when . . . the federal court must determine that the state court judgment was erroneously enter*ed* or must take action that would render that judgment ineffectual.") (quoting <u>FOCUS v. Allegheny County Court of Common Pleas</u>, 75 F.3d 834, 840 (3d Cir. 1996)) (emphasis added).[13]

That said, it is not clear to what extent the Superior Court ruled on Plaintiff's fraud allegations and related defenses in granting final judgment.  The motion to

---

[13]    Because the state court judgment here was final, I am not called upon to address that line of cases considering whether <u>Rooker-Feldman</u> applies to interlocutory orders in the foreclosure context.  <u>See</u> <u>In re Hodges</u>, 350 B.R. 796, 800-801 (Bankr.N.D.Ill. 2006) (collecting cases); <u>see</u> <u>e.g.</u>, <u>Randall</u>, 358 B.R. at 159 n.9 (holding that <u>Rooker-Feldman</u> applies to Pennsylvania foreclosure judgment whether interlocutory or final).

vacate decision very thoroughly addressed those allegations, but that decision had not been rendered at the time this action was filed.  And, while the Superior Court judge referenced a summary judgment written opinion (which would have issued prior to the filing of this suit), both counsel have certified that no such document exists.  This is troubling because, as suggested by the <u>Koynok</u> Court, the first step in the <u>Rooker-Feldman</u> analysis is to "determine exactly what the state court decided."  328 Fed.Appx. at 137.

Nevertheless, it is clear from the face of the complaint that certain claims are barred by <u>Rooker-Feldman.</u>  When a defendant in a state foreclosure action files a subsequent civil suit, courts have held that any claim that seeks to rescind the mortgage transaction is barred because it would be "inextricably intertwined with the foreclosure judgment."  <u>Jacobowitz</u>, 2010 WL 1063895 at *2.  This is because granting rescission would require the federal court to invalidate the state foreclosure action.  <u>See</u> <u>In re Madera</u>, 586 F.3d at 232 (agreeing with district court's conclusion that "granting rescission would amount to finding that no valid mortgage existed"); <u>Challenger</u>, 2009 WL 708116 at ("to the extent Plaintiff seeks rescission of the transaction and related relief, these claims are barred by *Rooker-Feldman*, as the state court foreclosure proceeding was dependent upon the existence of a valid mortgage") (quoting <u>In re Stuart</u>, 367 B.R. 541, 551 (Bankr.E.D.Pa. 2007)) (internal quotation marks omitted).

Here, Plaintiffs' claims are for fraud, NJCFA, unconscionability, unjust enrichment, and breach of contract.  They seek both rescission and money damages

in connection with each claim.  To the extent that plaintiffs claims seek rescission of the mortgage, they are barred by <u>Rooker-Feldman</u>.  The requests for damages under these counts, however, may be addressed on the merits.

Procedurally, Plaintiffs did not file in federal court—defendants removed. Where a complaint has been removed, the appropriate course is usually to remand those claims barred by <u>Rooker-Feldman</u> to state court.  <u>Accord</u> <u>Jefferson El Bey v. North Brunswick Mun. Court</u>, 2008 WL 2510725, *2 (D.N.J. Jun. 19, 2008). However, for reasons discussed *infra*, what remains of Plaintiffs' claims are barred by New Jersey's Entire Controversy Doctrine.  In a circumstance such as this, the Third Circuit has suggested that dismissal of the entire complaint promotes the most "economical use of judicial resources."  <u>Opdycke v. Stout</u>, 233 Fed.Appx. 125, 131 n.10 (3d Cir. 2007).

### 2.   <u>Younger</u> Abstention

Courts in this circuit also raise, *sua sponte*, the question of whether <u>Younger</u> abstention applies when the state foreclosure action is still pending.  <u>See</u> <u>e.g.</u>, <u>Gray v. Pagano</u>, 287 Fed.Appx. 155, 157 n.1 (3d Cir. 2008); <u>Downey v. Perrault</u>, 2009 WL 3030051, *1 (D.N.J. Sept. 15, 2009).   Unlike <u>Rooker-Feldman</u>, whether the state court proceeding is pending or final must be considered anew at each juncture in the proceeding—not only at the time the suit is filed.  <u>Dixon v. Kuhn</u>, 257 Fed.Appx. 553, 555 (3d Cir. Dec. 11, 2007) (concluding <u>Younger</u> applied because "*[a]t the time the district court abstained*, [the plaintiffs] had filed an appeal ….") (emphasis

added).  There is no <u>Younger</u> concern in this case because the foreclosure judgment has been entered, and the motion to vacate that judgment denied.

In addition, while the Sheriff's sale of the Patetta property is still pending, under New Jersey law, the sale is but the execution of the already-granted foreclosure judgment, as explained *supra*.  That the Sheriff's sale has not occurred means only that the property is still subject to redemption by the defaulting mortgagor.  <u>See</u> <u>Chase Manhattan Bank v. Josephson</u>, 135 N.J. 209, 218 (1994).  As noted, it does not mean that the foreclosure judgment is still pending.  Moreover, there is no pending state court appeal which might suggest abstention would be appropriate.  <u>Compare</u> <u>Gray</u>, 287 Fed.Appx. at *2 (abstaining under <u>Younger</u> as Pennsylvania foreclosure judgment was being appealed in Pennsylvania state courts).

C.    Entire Controversy Doctrine

Turning now to the question of preclusion, see <u>Turner</u>, 449 F.3d at 548, I consider whether those claims not barred by <u>Rooker-Feldman</u> are precluded by New Jersey's Entire Controversy Doctrine.  "This approach is particularly appropriate in this case inasmuch as the Supreme Court in <u>Exxon Mobil</u> explained that the continuing vitality of a federal action filed after entry of a state-court judgment often depends on state preclusion law."  <u>Id.</u>  And, the Full Faith and Credit Act requires federal courts to "give the same preclusive effect to a state-court judgment as another court of that State would give."  <u>Opdycke</u>, 233 Fed.Appx. at 128 (quoting <u>Exxon Mobile</u>, 544 U.S. at 293).  Thus, in this case, "New Jersey's own preclusion

rules, known as the 'Entire Controversy Doctrine,' govern whether this federal suit is barred." Id. (citing Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 887 (3d Cir. 1997)).

To be sure, Defendants relied upon *res judicata* and collateral estoppels, as opposed to the Entire Controversy Doctrine, in support of their motion to dismiss. However, a recent New Jersey Appellate Division decision described the Entire Controversy Doctrine as closely related to *res judicata*. See Accident Fund Ins. Co. v. PML Holdings Group, LLC, 2009 WL 4724804, *5 (N.J.Super. App. Div. Dec. 11, 2009) ("The Entire Controversy Doctrine promotes the policies of mandatory joinder and claim preclusion associated with the more widely known doctrine of *res judicata*."). Other New Jersey cases use similar language. See e.g., McNeil v. Legislative Apportionment Comm'n, 177 N.J. 364, 395 (2003) ("The concept that a party is required to bring all possible claims in one proceeding is embodied in the *closely linked concepts of res judicata and the entire controversy doctrine*.") (emphasis added); Long v. Lewis, 318 N.J.Super. 449, 459 (App. Div. 1999) ("The claim preclusion aspect of the entire controversy doctrine is essentially *res judicata* by another name."). In another recent decision, the Third Circuit applied New Jersey's Entire Controversy Doctrine *sua sponte* in a plaintiff's appeal from a district court's *res judicata* decision. Accordingly, I will apply the Entire Controversy Doctrine here.

Moreover, application of both *res judicata* and collateral estoppel would be complicated in this case by the incomplete summary judgment record and could not

22

be decided on a motion to dismiss given the detailed nature of the factual inquiry generally required in preclusion cases. See Brody, 145 Fed.Appx. at 773 ("Whether claim preclusion applies is a delicate question often requiring factual comparisons, and thus often is decided on a motion for summary judgment."); In re Mullarkey, 536 F.3d 215 (3d Cir. 2008) (declining to rule on *res judicata* grounds where the "record on appeal provide[d] . . . no indication as to whether there was a merits determination during the New Jersey state court's foreclosure proceeding."). Additionally, as noted in my Rooker-Feldman analysis, some of the civil claims here were asserted as defenses at the motion to vacate stage (*i.e.*, fraud and unconscionability), but not all of them (*i.e.*, NJCFA, unjust enrichment, breach of contract). Thus, even if I could rule on collateral estoppel grounds at the motion to dismiss stage, collateral estoppel would not serve to bar all of Plaintiffs' claims because that doctrine applies only to those claims actually litigated and decided in the prior action. See First Union, 190 N.J. at 352 (setting forth elements of collateral estoppel).

"The [entire controversy] doctrine is a preclusionary device, intended to prevent fractionalized litigation by requiring the assertion of all claims arising from a single controversy in one action." Accident Fund, 2009 WL 4724804 at *6 (citing Prevratil v. Mohr, 145 N.J. 180, 190 (1996)). In determining whether the doctrine applies, "the central consideration is whether the claims . . . arise from related facts or the same transaction or series of transactions." DiTrilio v. Antiles, 142 N.J. 253, 267 (1995) (citation omitted). Courts have explicitly held this doctrine applicable in

the foreclosure context.  See In re Mullarkey, 536 F.3d at 228 (interpreting New Jersey law).

In New Jersey, the Entire Controversy Doctrine is limited, in the foreclosure context, to those counterclaims deemed "germane" under New Jersey Court Rule 4:64-5.  That rule provides that "[o]nly germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court."  N.J. Ct. R. 4:64-5.  While the rule does not define "germane," it defines "non-germane" claims as including, but not limited to, those "claims on the instrument of obligation evidencing the mortgage debt, assumption agreements, and guarantees …."  Id.  The exact bound of the "germane" requirement continues to be explored by New Jersey courts.  See 30A N.J. Prac. Law of Mortgages § 30.8 (analyzing decisions).

Courts have considered several types of claims germane to a New Jersey foreclosure action, including those:

> (a)     challenging the circumstances surrounding origination of the loan, see Bank of New York v. Ukpe, 2009 WL 4895253, *7 (D.N.J. Dec. 9, 2009);

> (b)  challenging the validity of the loan itself, see id.;

> (c)   seeking equitable recoupment based on violations of the Federal Housing Act, the Civil Rights Act, and the New Jersey Law Against Discrimination, see Assoc. Home Equity v. Troup, 343 N.J.Super. 254 (App. Div. 2001);

> (d)   "arising out of the mortgage transaction," Leisure Technology-Northeast, Inc. v. Klingbeil Holding Co., 137 N.J.Super. 353, 356 (App. Div. 1975);

> (e)   asserting a breach of a mortgagee's promise to purchase the property, see Sun NLF Ltd. Partnership v. Sasso, 313 N.J.Super. 546 (App. Div. 1988); and

> (f)   challenging the amount due on the mortgage, <u>see</u> <u>Troup</u>, <u>supra</u>.

One New Jersey court has suggested that a mortgagee's breach of loan commitment is not germane, but that comment has been criticized.   30A N.J. Prac. Law of Mortgages § 30.8 (discussing <u>Joan Ryno, Inc. v. First Nat'l Bank of S. Jersey</u>, 208 N.J.Super. 562, 570 (App. Div. 1986)).   In any event, application of the doctrine is not absolute but is "flexible, with a case-by-case appreciation for fairness to the parties." <u>Mullarkey</u>, 536 F.3d at 229.

It is clear from the face of Plaintiffs' complaint that the claims asserted therein are germane and could have been raised in the foreclosure proceeding. Plaintiffs' claims for fraud, NJCFA, unconscionability, unjust enrichment, and breach of contract are each the sort of claims that have been deemed germane by courts in that the claims challenge the origination and validity of the mortgage, arise out of the mortgage transaction, and dispute the amount due on the loan.[14] <u>See</u> <u>In re Mullarkey</u>, 536 F.3d at 230 (describing the doctrine as applicable where a

---

[14]   By contrast, in a recent unpublished decision, the Appellate Division declined to apply the Entire Controversy Doctrine to non-germane counterclaims for repair costs and lost rents.  <u>See</u> <u>Thomas & Cheryl Koziol, Inc. v. Lasalle Nat'l Bank</u>, 2010 WL 1189800 (N.J. Super. App. Div. Mar. 29, 2010).   In that case, the foreclosure judge forbade the mortgagor from bringing any claims not directly related to the mortgage default itself.    While this unpublished decision is not a binding interpretation of New Jersey law, it is persuasive authority that clarifies the outer bounds of New Jersey's entire controversy doctrine.  The claims here, being directly related to the mortgage transaction, clearly fall inside the <u>Thomas</u> boundary. <u>Accord</u> <u>Mystic Isle Dev. Corp. v. Perskie & Nehmad</u>, 142 N.J. 310, 323 (1995) (stating that it is the factual context "giving rise the controversy itself, rather than a commonality of claims, issues or parties, that triggers [application of the entire controversy doctrine]").

plaintiff alleges that the mortgagee breached the parties' underlying agreement) (discussing <u>Leisure Tech.</u>, 137 N.J.Super. at 357-58).

While New Jersey has expressed some concern in applying the Entire Controversy Doctrine to *pro se* litigants in summary proceedings, <u>see</u> <u>id.</u>, the Patettas were represented by counsel on the motion to vacate.  The Patettas also filed several bankruptcies, thereby extending the time they were able to stay in their home.  <u>See</u> Compl., ¶ 41 (acknowledging that Plaintiffs filed "bankruptcies" in 2008).  Mr. Patetta was, therefore, not the typical *pro se* and, the Patettas have remained in their home for several years during the course of litigation.  For these reasons, I see no equitable basis for withholding application of the Entire Controversy Doctrine here.

III.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

<u>/s/ Freda L. Wolfson</u><br>
Hon. Freda L. Wolfson, U.S.D.J.

Dated:  May 12, 2010